**Sophie ARONOFF, Appellant,**

v.

**CITY OF ST. LOUIS, a municipal corporation, A. H. Baum, Building Commissioner of the City of St. Louis, and A. C. Eschmann, Respondents.**

**No. 45768.**

Supreme Court of Missouri,

Division No. 2.

July 13, 1959.

Motion for Rehearing or to Transfer to Court en Banc Denied Sept. 14, 1959.

G. L. Seegers, Gerwitz & Seegers, St. Louis, for appellant, Charles J. Dolan, Acting City Counselor, Thomas F. McGuire, Associate City Counselor, David S. Hemenway, Asst. City Counselor, St. Louis, for respondents.

LEEDY, Judge.

Action to enjoin the further demolition of a building owned by plaintiff in the City

of St. Louis which the defendant city "condemned," and, at the time of the filing of the petition herein, had partially razed (under contract with defendant Eschmann), and to require restoration thereof to its condition as of the time demolition began, or, alternatively, for damages against the city for such destruction and demolition. The petition also prayed declaratory relief (that certain charter provisions and sections of the building code, together with the condemnation of plaintiff's property pursuant to such provisions, be declared void as unconstitutional). The hearing which forms the basis of this review was upon an order to show cause why a temporary injunction should not issue, which, by stipulation entered into at the conclusion of such hearing, was then, and is now to be treated as having been a submission on the merits as on application for a permanent injunction. Decree for defendants dismissing plaintiff's bill, and the latter appeals.

The structure in question consisted of a vacant two-story, four-family flat or tenement at 2707–11 Henrietta. It was concededly in a dilapidated condition, when, on August 31, 1954, defendant building commissioner, A. H. Baum, purportedly acting under the provisions of the city charter and ordinances (building code) hereinafter to be noticed, "condemned" the building. By letter dated September 1, 1954, he notified plaintiff "that a two-story fourth class building, located 2707–11 Henrietta in City Block No. 2134 of the City of St. Louis, Missouri, was duly inspected by the Division of Building and Inspection and found to be in a condition as to endanger the lives of persons and therefore was condemned by me on the 31st day of August, 1954. The Inspector reports as follows: Tenement (vacant). All exterior brick walls are badly bulged; interior floors sagging and in a weakened condition; interior plaster falling; doors and windows broken; rear frame of porches in a dilapidated condition; and all members badly decayed and broken; building is in hazardous condition.

"This building must be made safe or removed by you within three days.

"Therefore, acting on the authority vested in me by Section 15 Article 13 of the Charter of the City of St. Louis, 1914, and Sections 67 to 71 of Part One of the Revised Code of the City of St. Louis, 1948, this building will be removed and a lien placed on your property for the amount of the expenses incurred by me unless the aforesaid notice is complied with."

Plaintiff immediately applied to the building commissioner's office for, and she was granted a building permit authorizing alteration and reconstruction of the building in particulars therein detailed so as to make the building "usable and safe." This permit was issued September 4, 1954, and by its terms expired March 4, 1955. It was extended or new ones issued from time to time, the last one expiring either December 27, 1955, or (according to respondents' brief) not later than March 1, 1956. The work thus authorized did not begin for several months, was carried on spasmodically and in a most dilatory way, and had not been completed at the latest of the expiration dates above mentioned. The nature and extent of the repairs actually effected is a matter of some dispute, as is the quality of the workmanship. A building inspector on the job testified that the brickwork done was the worst he had ever seen; whereas, the bricklayer testified he received no complaint from the inspector, or the city, about the way he was doing the work, nor was the work stopped. In the view we take of the case, it becomes unnecessary to review the evidence touching these matters. It is sufficient to say that one wall had been torn down and rebuilt and another torn down and partially rebuilt, metal I-beams were installed in the basement, and other work had progressed to some degree, and there were materials on the premises with which to do further work, when on May 21, 1956, without notice to plaintiff, Eschmann, under a contract with the city so to do, started the work of demolishing or removing the build-

ing, thus precipitating the filing of this action.

Art. XIII, § 15(e) of the charter provides, among other things, that the division of building and inspection (of the department of public safety), the head of which division is the building commissioner, "shall * * * have charge of the condemnation of unsafe buildings and the prevention of the use of buildings while unsafe, the granting of building permits, the inspection of all buildings in course of construction * * *," etc.

The pertinent portions of § 67 of the building code under which the city moved, and now seeks to uphold the validity of its actions, follow: "Whenever the building commissioner shall be informed that any building or part thereof * * * in the city is in a condition such as to endanger the lives of persons * * * he shall at once inspect or cause an inspection or examination to be made of such building * * * and a written report of such finding shall be filed in said office. The building commissioner shall at once notify the owner or owners in writing, as provided by section 68 of this Code of the condition of such building, * * * and shall command him or them to have same removed or otherwise properly secured three days next thereafter, and if such owner or owners fail to either remove or properly secure such building * * * within the said time, and in such manner as under this ordinance can be approved by the building commissioner, he shall forthwith proceed to have the same secured so as to render it safe, unless in his judgment the same cannot be reasonably secured or rendered safe, in which case he shall at once demolish or remove the same, or such part thereof as may be necessary." The section further provides that the cost of securing or demolishing such a structure by the building commissioner shall be paid in the first instance by the city out of a contingent fund for that purpose, and the amount thus expended certified by the comptroller, approved by the mayor, and recovered from the owner of the building. Note the quality of immediacy inhering in the operation of these provisions: The requirement that the owner secure or remove the building within three days; upon his failure to do so "within the said time," the building commissioner "shall forthwith proceed" to render safe, unless, etc., "in which case he shall at once demolish or remove the same," etc.

Plaintiff contends that § 67 of the building code limits the building commissioner's right to demolish or remove a building to such structures only as in his judgment cannot reasonably be secured or made safe, and consequently what the city did in this case was not within the ordinance, nor in accordance with rules of constitutional law. Disregarding and apart from the supposed aspects of unconstitutionality urged upon us, we think it manifest that the other portion of plaintiff's said contention must be sustained.

Upon failure of an owner to remove or secure the building within three days after notice to him of its condition, and the accompanying command to remove or secure, it becomes the duty of the building commissioner to do what with respect to a condemned building? Says § 67, "[H]e shall forthwith proceed to have the same secured so as to render it safe," and the only contingency under which he may demolish or remove is strictly limited to the authorization contained in the remaining language of said sentence, to-wit, "unless in his judgment the same cannot be reasonably secured or rendered safe, in which case he shall at once demolish or remove the same, or such part thereof as may be necessary." The fact of the issuance and the renewal of building permits to alter and reconstruct so as to secure the building (to say nothing of plaintiff's actions, however dilatory, in pursuance of such permits), which extended over a long period of months, obviously operated to take the case out of that portion of § 67 authorizing demolition or removal of the building, when (and only when) in the commissioner's judgment "the same cannot be reasonably secured or ren-

dered safe," etc. Consequently, under the facts here in judgment, the commissioner was not authorized to demolish or remove the building at the time he did so, and his action in so doing cannot be sanctioned under the ordinance. For somewhat analogous cases see Rosenberg v. Sheen, 77 N.J. Eq. 476, 77 A. 1019, and Vanderhoven v. City of Rahway, 120 N.J.L. 610, 1 A.2d 303. The decree to the contrary must therefore be, and it is, reversed. Inasmuch as we are told, and it seems to be conceded that following the trial demolition proceeded to completion, the live issue remaining at this stage of the proceedings (at least, under plaintiff's view) is that of the amount of plaintiff's damages. The record on this appeal is insufficient whereon to adjudicate that issue, and so the cause is remanded with directions to determine the amount of plaintiff's damages, and to enter judgment therefor.

All concur.